UNITED STATES APPELLATE COURT
FOR THE DISTRICT OF COLLUMBIA

Ling Yuan Hu

Appellant,

V.                                    CASE NO 13-5157

DEPARTMENT OF DEFENSE, et al

Appellee.

## OPPOSITION TO CROSS-MOTION FOR SUMMARY AFIRMANCE AND IN SUPPORT OF SUMMARY REVERSAL AND SANCTION WITH NEWLY DISCOVERED GOVERNMENT DOCUMENT

Appellant ("HU") appeals two district court orders on May 13, and May 16 of 2013 (see court docket, the 2nd order attached as exhibit, p1), not just one order as Appellees ("DOD/CIA") state in the beginning of their summary affirmance. The two orders are in USDC document #23, #26. DOD/CIA's summary affirmance is very inappropriate when they know the dismissal clearly against law, FOIA/PA, and this court's case law. From this February through now, DOD/CIA cannot provide any new evidence to countervail HU's evidences that DOD/CIA commit lots forgery and perjury in their affidavits for summary judgment (see HU's "Statement of Genuine Issues", document #10, p35-73) in order to hide the fact HU is a US citizen since 2001, and to dismiss her case. DOD/CIA conceded it by remaining silent. All the court cases DOD/CIA cited in their motion do not fit in

this instant case, especially when HU provides mounting official evidences. Hence this summary affirmance should be denied since first, counsels provide nothing new to change the fact the dismissal of 9 FOIA/PA claims clearly violate FOIA/PA; secondly, it is district court's abuse of discretion to take all US patents and many government official document as "allegations" instead of "fact" (exhibit, p2). And lastly, government agency lying to court with swore affidavits should not be rewarded as a regular activity.

The district court dismissed HU's all claims pursuant to Fed. R. Civ. P. 12(b)(1) lack of subject matter Jurisdiction because the court ruled all HU's claims, including 9 FOIA/PA claims, are "patently insubstantial" and "fictitious". It is beyond any doubt that the district court both interpreted and applied the FOIA/PA jurisdiction principle incorrectly. HU's 9 FOIA/PA claims arise from record deny by all agencies, and DOD/CIA admit that by arguing all agencies have done adequate search in their motion for summary judgment (exhibit, p3). ODNI and FBI both advised HU for judicial review. DOD/CIA counsels intentionally misrepresent in their motion to dismiss when they tell HU and the court, twice, "In a FOIA action, a district court has jurisdiction only when an agency has improperly withheld agency records." (exhibit, p4; or document #8, p10 & p38) It is clearly error of law that district court dismissed 9 FOIA/PA claims based on discretion that other constitutional claims are "fictitious", especially when government secret

surveillance on citizens has become a common knowledge now after media leaks.

Recently, ODNI and NSA's blanket communication surveillance have been gradually revealed and publicly admitted by US government. These secret surveillance programs like PRISM, UPSTREAM, TURBULENCE, XKeyScore are all proved true facts, not fictions. Besides monitoring their targets' real-time activity online and by phone, US intelligence agencies also install Trojans, misinformation, attacks on networks to "dominate" the internet. CIA's torture interrogation techniques and black sites are also facts confirmed and condemned by Senate CIA investigative report in 2012, not fiction. Based on these cases, government extensive surveillance and illegal human experiments on mind control drugs/materials have been recognized by courts as facts, not fiction. Besides, HU's injuries in fact are all personal, particularized, and concrete. DOD/CIA still cannot provide any evidence to justify their illegal surveillance. The district court's ruling on HU's Article III standing is both against the court's case law and recognized public facts. HU provides more newly discovered government document to this court in her argument IV to further support her constitutional claims.

In DOD/CIA's narrative background facts, DOD/CIA deliberately singled out and emphasized those harassment tricks they play in their standard procedures on surveillance targets to confuse their judgment and so DOD/CIA could discredit their testimony, a common strategy in counter intelligence. Without surprise that

3

DOD/CIA never mention they were caught on forgery and perjury. HU did not know which agency is responsible for the surveillance and torture before, but now she graduate knows it is CIA and Department of defense. All the other agencies' responsive records all originated from DOD, especially NSA, and CIA, but are told not to release to HU. In HU's motion for preliminary injunction, and later on more evidences of internet disruptions, phone redirections and landlord harassment, HU provided lots evidences that her computer was sabotaged by disguised malwares, and half of her register DOIA/PA mails always delayed or without delivery information, which are confirmed by US Post Office. (document #3, exhibit A,)

## STANDDARD OF REVIEW

A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified. See *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir.), cert. denied, 449 U.S. 994, 1 01 S. Ct. 532, 66 L.Ed.2 d 292 (1980). To summarily affirm an order of the district court, this court must conclude that no benefit will be gained from further briefing and argument of the issues presented. *Sills v. Bureau of Prisons*, 761 F.2d 792, 7 93-94 (D.C. Cir. 1985). In addition, this court is now obligated to view the record and the inferences to be drawn therefrom "in the light most favorable to [taxpayers]." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 , 994, 8 L.Ed.2d 176 (1962 ).

# **ARGUMENT**

## I. THE DISMISSAL OF 9 COUNTS OF FOIA/PA CLAIMS BASED ON 12(b)(1) LACK OF JURISDICTION ARE ERROR OF LAW ACCORDING TO FOIA/PA AND THIS COURT'S CASE LAW

The purpose of FOIA and PA is to create government transparency and protect against unwarranted invasions of citizen's privacy. It would certainly undermine this goal by allowing government agency raising unreasonable excuse to withhold records for cover-up of misdeeds. HU's FOIA/PA claims have all exhausted administrative appeals before resulting to the District court for judicial review. DOD/CIA have never challenged or presented any countervailing evidence for the standings of FOIA/PA claims in their motion to dismiss, or summary judgment. In fact, DOD/CIA sought for summary judgment claiming they have done adequate searches for all HU's FOIA/PA requests (page 23, document #8). Hence, it is clear fact DOD/CIA never argue HU's 9 counts of FOIA/PA claims have no standings, and by law, the district court should rule on this summary judgment instead of dismissal without clear rationale. This proves district court made a clear error of law dismissing all HU's 9 FOIA/PA claims.

DOD/CIA counsels commit plenty forgery and perjury in their affidavits for motion for summary judgment, and the details are elaborated in argument III. Besides, why DOD/CIA raise 4 Glomar Deny- NSA, CIA, ODNI, and FBI, if HU's FOIA/PA claims have no standings? If these agencies really do not have HU's

responsive record, why they did not simply do a computer search and then say "no record found"? HU has proved that she is a US citizen since 2001, but why department of state and CIA did not find this information and her personal data? What DOD/CIA's counsels did not say is that the Office of secretary defense and joint staff (OSD/JS) still refuse to do any computer search and reject to take her appeals (document #1, exhibit, p5). Apparently, counsels are playing double dealings exploiting all arguments with HU's FOIA/PA claims, including lying, but all these arguments are mutually exclusive and contradictory to each other.

## II.   DISMISSAL OF FISA, ECPA AND CONSTITUTIONAL CLAIMS FOR 12(b)(1) LACK OF JURISDICTION ARE BOTH ERROR OF LAW AGAINST COURT'S CASE LAW AND ABUSE OF DISCRESION ON FACT

HU's FISA, ECPA and Constitutional claims have standings based on Supreme court Biven's action and this court's case law *Horn v. Huddle*, 647 F. Supp. 2d 55, 66. (D.D.C. 2009). There are plenty similar cases in other Circuits for government surveillance and conspiracy. *Vietnam Veteran of America, et al v CIA, DOD, et al* (N.D. Cal. 2009) is about DOD/CIA human experiment test using unwitting service members on chemical, biological and radiological agents; *Jewel v NSA* 9th Cir (2011); *Al-Haramain Islamicoundation, Inc. v. Obama*; *Amnesty Int'l United States v. Clapper*, 638 F.3d 118, 122 (2d Cir. 2011); *ACLU v NSA* 6th Cir (2007). Based on these cases, government extensive surveillance and human experiments on mind control materials have been recognized by courts as facts, not fictions.

6

If DoD/CIA counsels claim that HU's FISA, ECPA and constitutional claims against government should fail due to sovereign immunity, then they self-define that all government agencies are above the laws and constitution. And they have to explain to the court why *Vietnam Veteran of America, et al v CIA; Jewel v NSA* 9th Cir (2011); *Al-Haramain Islamicoundation, Inc. v. Obama* 9th Cir (2012); *Amnesty Int'l United States v. Clapper*; *ACLU v NSA* 6th Cir (2007) and a lot of other cases against US government all did not fail due to sovereign immunity. These are all government illegal surveillance and human experiment cases. Besides, why supreme court create the Biven's action against government employee? In fact, Congress has waived the federal government's immunity across a broad range of substantive law- See, e.g., Federal Tort Claims Act, 28 U.S.C. § 1346(b); Tucker Act, 28 U.S.C. §1491; Ex Parte Young 209 U.S. 123 (1908) where the stripping doctrine states that once a public official has acted illegally, they are theoretically stripped of their position's power and are eligible to be sued as individuals. Congress also waived sovereign immunity in cases seeking injunctive or other nonmonetary relief against the United States in a 1976 amendment to the Administrative Procedure Act (5 U.S.C.A. §§ 702–703).

**III. HU HAS PRESENTED LOTS FACTUAL EVIDENCES AND OFFICIAL DOCUMENT TO SATISFY PLAUSIBILITY ON HER FISA, ECPA AND CONSTITUTIONAL CLAIMS TO DISTRICT COURT**

In order to find out who is secretly conducting the surveillance, HU started to write her FOIA/PA request to many government agencies since July 2011. And to her surprise, NSA, ODNI and FBI all raise Glomar Deny, and CIA, Office of Secretary of Defense/Joint Chief (OSD/JS) (p108, document #10, and p5, exhibit of document #1), State Department (DOS) (p18 of DOS exhibit, document #8-8), Executive Office of US Attorney (EOUSA) (document #8-4, EOUSA exhibit, p30-31) all rejected to process her requests. ODNI issued HU a letter for judicial review (p1, exhibit A, document #1). DOJ issued a letter for judicial review on HU's first request to FBI on Oct 28, 2011 (document #8-7, FBI exhibit, p20), but rejected HU's appeal to her 2nd modified request (document #10, p96-100). After HU filed FOIA/PA lawsuit on Oct 3, 2012, DOS and EOUSA quickly did a computer search for their motion for summary judgment in December 2012. HU presented her rebuttal evidences in her "statement of issues" for her opposition to MTD (document #10, p35-73, and p93-117 exhibit) and proved CIA, DOJ and DOS committed forgery and perjury. CIA used HU's FOIA/PA request to ODNI as her request to CIA (document #8-9, CIA exhibit, p2) and constantly lied on their FOIA/PA process (document #10, p35-p40). DOS lied to court they advised HU her right for judicial review, but the letter proves they lied (document #10, p63-64; document #8-8, DOS exhibit, p16). DOS also actively lie and hide the fact HU is a citizen since 2001(see HU's passport on document #12, exhibit p2), and made up a

Visa application record on Nov 15, 2012 (document #12, p21-22), withheld in full, in their search response, while HU never apply any Visa after 1995. EOUSA lied they did a computer search in May 2012, but HU proved EOUSA rejected HU's request with a letter dated on June 25, 2012 (document #8-4, EOUSA exhibit, p30-31), and mailed her search response on Oct 31, 2012, after HU's lawsuit (document #8-4, EOUSA exhibit, p39 and document #10, p41-p46). HU requested to search on EOUSA main office, but EOUSA rejected and instead did a search on DC office. DOJ appeal office lied they did not receive HU's record deny appeal for her 2nd modified request to FBI, but HU provided two acknowledgement letters (document #10, p47-p48, p99-100) and DOJ conceded. DOD's OSD/JS never responded to HU's appeals to both DMDC and OSD/JS. (document #10, p53-p55, p107; document #1, exhibit, p5)  CIA later raises Glomar Deny to HU in a response letter dated on Mar 4, 2013 but did not notify the court (document #17). All these agencies' countless forgery and perjury prove government conspiracy to withhold HU's records.

In HU's complaint, HU clearly described how DOD/CIA conduct their surveillance, break-in and sabotage, secret attack with non-lethal weapon/directed energy weapon for pains, memory loss and emotional distress, stalking and harassment. These long years of continuous injury, are all personal, particular and concrete. Defense department's Non-lethal weapon, also called directed energy

9

weapon, ex. active denial system-heat ray, are use of microwave, laser and sound wave that can penetrate buildings and can be delivered to their targets at long range through their giant phased array RADAR system (over the horizon RADAR) or satellites. These RADAR, or LIDAR (Laser RADAR), can cause disturbance and dysfunctions to human central nerve system and modify behaviors, as DOD's research papers investigated since 50 years ago.

HU has provided lots proofs by US official documents: "non-lethal weapon directorate" (document #20, exhibit B) and "directed energy directorate" (document #10, p82-89; motion for summary reversal, exhibit B); DOD declassified research document "Bioeffects of selected Nonlethal weapons" (document #12, exhibit A, p11-14); military contracts from Office of Naval Research for research on laser and microwave biological effects, which cause various pains and neurological effects on human and mammals (document #10, p87-89; and document #24, p4-12); and list of US patents. (document #24, and motion for summary reversal exhibit A) HU also presented proof that over thousands of complaints flooded to "Presidential Commission For The Study of Bio Ethical Issues" in their 2011 meeting (document #19, exhibit A, p7 and motion for summary reversal, exhibit B, p5) These people from all over USA all suffered similar surveillance, harassments, sabotages and body pains. So many similar complaints prove HU's complaints are real, not fiction. In district court's opinion

for its May 16 order, it is an abuse of discretion to say US patents, military nonlethal weapons and direct energy weapons are all "allegations" and "no existence".

In 2006, in order to discredit HU and destroy her confidence and resistance, DOD/CIA sent a substitute professor Kathy Clark to George Washington University to deliberately sabotage HU's academic records and rejected her Master degree by frauds. GWU's conspiracy has been proved by the district court in *HU v GWU* 766 F. Supp. 2d 236 (D.D.C. 2011) DOD/CIA then abused their power to continuously influence HU's school employers to give her bad evaluation and force her into prolonged unemployment. After 2009, to stop HU's lawsuit, with their secret surveillance programs and technology, DOD/CIA actively control HU's mails, her computer, emails, her phone and all communications to friends, courts and even her ECF filing process. So what she sees in her computer and hear are mostly "manipulated" by DOD/CIA to mislead her. This is serious obstruction of justice and violations of constitutions. US intelligence's illegal "mail-opening" campaign has been proved by Church investigation report in 1976 and recently in media leak too. These communication blocks and manipulations to HU have also been proved and conceded in HU's proposed scheduling order (document #16, exhibit A, p17-19). In HU recently filed notice to court, DOD/CIA even sabotaged her credit card transactions (notice and exhibit filed July 27, 2013).

# IV. NEWLY DICOVERED EVIDENCES FROM GOVERNMENT DOCUMENT AND US PATENTS

The recent declassified FISA court opinion in 2011 confirms that NSA, FBI and CIA's "Upstream" collection of Internet communications violate both FISA and Constitution. This proves that HU's FISA, ECPA and Constitutional claims on government surveillance are not fictitious and patently insubstantial, but facts. NSA, CIA and FBI have broken the "good faith" presumption for government again. HU recently discovered more evidences from government document to support her constitutional claims against DOD/CIA's illegal surveillance, torture and assault on her and her family. The first one is a lawsuit *Vietnam Veteran of American v CIA, DOD et al* (N.D. Cal. 2009) against DOD/CIA human experiment on unwitting subjects. The history and facts of DOD/CIA weapon testing projects are detailed in plaintiff's 3rd amended complaint, where page 38 of that complaint includes DOD/CIA's project MKULTRA. HU's 2nd new piece of evidence, the "CIA Inspector General Report on Inspection of MKULTRA" in 1963, exactly confirms and verifies this project, its scope and goal. On the first page of this 42-page report, it says very clear that "The MKULTRA activity is concerned with the research and development of chemical, biological and radiological materials capable of employment for clandestine operations to control human behavior." (exhibit, p5) On page 24, it states that CIA has radiation project and devices for remote measurement of physiological processes (exhibit, p6).

The 3rd evidence is the Senate Church Committee drug testing report on US Intelligence. (exhibit, p7) In the report, it says "The research and development of materials to be used for altering human behavior consists of three phases….third, the application of MKULTRA materials in normal life settings." (exhibit, p8) and "MKULTRA/MKDELTA materials were also used for harassment, discrediting or disabling purposes. (exhibit, p9) More Church report is on "PROJECT MKUltra, THE CIA's PROGRAM RSEARCH IN BEHAVIORAL MODIFICATION". (document #12, exhibit A, p3-7; document #21, exhibit A, p11-17)

The 4th piece of evidence are some declassified CIA document related to CIA MKULTRA subproject #119. These around 20,000 image files can be ordered from CIA in 3 CDs or go directly online at http://www.wanttoknow.info/mind_control/cia_mind_control_documents_orig

The goal of this subproject #119 is described in #DOC0000017376_0021 as "the recording, analysis, and interpretation of bio-electrical signals from human organism, and activation of human behavior by remote means." (exhibit, p10) Further more document showed CIA went beyond "document review" and secretly worked with various laboratories to finish tasks from recording human brain EEG through activation of human behavior by electronic means. In CIA file #DOC0000017376_0041 (exhibit, p11), it showed CIA's cooperating laboratory developed was looking for frequency analyzer of 36 channels to interpret human

EEG, and exploited new technology on RADAR telemetry in 1959. Then in 1974, a DOD RADAR contractor filed US patent #3951134 "Apparatus and Method For Remotely Monitoring and Altering Brain Waves" (document #21,exhibit A, p14). It radiates radio frequency, also named by electromagnetic energy, of different frequencies through antennas which are capable of scanning the entire brain of the test subject or any desired region thereof. According to the US patent paper, "Seizures, sleepiness and dreaming; bodily functions such as pulse rate, heartbeat regularity and others also can be monitored, and occurrences of hallucinations can be detected." The processed brain waves can also be transmitted to subject's head to effect a desired brain wave change in electrical activity.

In 1973, Joseph C. Sharp, an experimental psychologist at the Walter Reed Army Institute of Research set up a landmark experiment on the road to synthetic telepathy. He aimed a microwave beam, modulated to resemble acoustic waves, at the back of his own head and was able to hear his own voice count off the numbers from one through ten. This technology further enhanced and is filed to US patent as US #6470214 "Method and device For Implementing the Radio Frequency Hearing Effect" (Microwave Hearing) by US Air Force in 1992, and later US #6587729 for microwave speech in 2003 (document #21,exhibit A, p13). In 1974, DOD/CIA contracted Stanford Research Institute to design a bio-cybernetic communication system recording human EEG to teach computer recognizing

human speech. It is two-way communication link between man and computer using biological information from muscles of the vocal apparatus and the electrical activity of the brain during overt and covert (verbal thinking) speech (motion for summary reversal, exhibit B, p7-8). In 2003, US patent #6536440 "Method and system for generating sensory data onto the human neural cortex" (exhibit p12) is a non-invasive system applying ultrasonic energy pulsed at low frequency toward the human brain on one or more selected locations of the cortex to produce sensation of visual, audio, taste, smell or touch by making change in the neural firing timing.

US Air Force published a report named "Radio Frequency/Microwave Radiation Biological Effects and Safety Standards: A Review" in 1994 (exhibit p13-15). The whole report is available download from Defense Technical Information Center at http://oai.dtic.mil/oai/oai?verb=getRecord&metadataPrefix=html&identifier=ADA282886
It is approved by USAF chief from "Wide Area Radar Surveillance Division of Surveillance & Photonics Directorate". The connection between military stealth RADAR and radio frequency/microwave is very clear. It also revealed that in 1956, 6 years after MKULTRA started, DOD directed the Armed Forces to investigate the biological effects of exposure to radio frequency/microwave (RF/MW) radiation. It is proved that DOD has these electromagnetic radiation weapons 50 years ago, so why DOD did not inform American public on these bio

hazards to human body? US patent #5738625 "Method of and apparatus for magnetically stimulating neural cells" in 1998 can change the state on one single neuron cell with microwave, ultrasound or phased array beaming at human head. US patent US #4503863 in 1985- "Method and apparatus for transcutaneous electrical stimulation" is direct skin radiation by modified amplitude of current and frequency to achieve a desired EEG state. US patent #3817254 in 1974 "Transcutaneous Stimulator And Stimulation Method" is also skin radiation to excite class A-beta fibres/touch nerve fibres and class C/pain receptor nerve fibres for desired medical treatment, ex pain. These US patents prove DOD's RADAR signal intelligence is more than capable to perform the same neuron stimulation, especially given that DOD/CIA funded so many research projects in brain/neurons and nerve systems stimulations.

From all these patents and information, it is confirmed that CIA MKULTRA's goal to activate and manipulate human behavior has been accomplished as early as 1974 when radio frequency, or RADAR is used to remotely detect and change human brain waves. And 40 years later, DOD/CIA's stealth RADAR surveillance/harassment system is completely computerized with advanced features for automatic tracking/locking by human bio features and brain EEG recognition. HU's complaint and testimony of harassment by noise campaign, odor, smoke, body pains and dysfunctioning can all explained by these secret radio

frequency radiation to her head and nerve system with those DOD non-lethal weapon.

## **CONCLUSION**

It is plain error of law for the district court to dismiss HU's 9 counts of FOIA/PA claims based on 12(b)(1) without reasonable rationale. It is even more obscure to order DOD/CIA's motion for summary judgment as "moot" given DOD/CIA's countless forgery and perjury in their affidavits. HU's FISA, ECPA and Constitutional claims have standings based on many case law and solid admissible facts and government official document to sustain the plausibility test. Hence, DOD/CIA's summary affirmance should be denied.

RESPECTFULLY SUBMITTED

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Ling yuan Hu /Appellant
　　　　　　　　　　　　　　　　　　8404 kay court
　　　　　　　　　　　　　　　　　　Annandale , VA 22003
　　　　　　　　　　　　　　　　　　703-309-8712   flower_music@hotmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2013, a copy of the foregoing opposition to motion for summary affirmance was served upon Appellee by ECF and email. I certify that all participants in the case are registered CM/ECF users

　　　　　　　_____
　　　　　　　Ling yuan Hu